Estate of G. C. Ealy, Deceased, Agnes McGrath, Administratrix with the Will Annexed, De Bonis Non v. Commissioner.
Estate of G. Ealy v. Commissioner
Docket No. 27026.
United States Tax Court
1951 Tax Ct. Memo LEXIS 238; 10 T.C.M. (CCH) 431; T.C.M. (RIA) 51137; May 9, 1951
*238 Stockholders of a closely held corporation agreed insurance would be purchased on the lives of certain of the stockholders, which insurance was paid for by the corporation. It was further agreed to apportion the insurance proceeds among surviving stockholders so as to provide them with funds to purchase deceased stockholders' shares. Decedent was the largest stockholder. On decedent's death proceeds of insurance on his life were used by the surviving stockholders to buy his shares from his estate. Decedent's shares were included in his gross estate and tax paid thereon. Held, respondent erred by including the insurance proceeds in decedent's gross estate. R. E. Lowe, Esq., for the petitioner. Douglas L. Barnes, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $15,875.66 in the estate tax liability of G. C. Ealy, deceased. The sole issue is whether the proceeds of an insurance policy on decedent's life should be included in his gross estate. Findings of Fact The facts as stipulated are so found and incorporated herein. The petitioner is the duly appointed administratrix of the estate *239 of G. C. Ealy, deceased, who died March 19, 1947, in the county of his residence, Spokane County, Washington. The tax return for the decedent's estate was filed with the collector of internal revenue at Tacoma, Washington. There was reported in the return the following item: Value
at date
Description
of death
1,598 shares of the common stock of
Inland Motor Freight, subject to
an indebtedness of $30,000.00, with
interest thereon in the sum of
$450.00
$113,370.00
Inland Motor Freight is a Washington corporation. At the decedent's death there were outstanding 3,020 shares of the $100 par value common stock of that corporation. Also issued and outstanding at that time were certain non-voting $100 par value preferred shares in that corporation, but which are not material in this proceeding. For approximately 20 years prior to his death the decedent was president and general manager of the corporation. On July 10, 1943, the stockholders of the corporation entered into an agreement entitled "Inland Motor Freight Stockholders' Insurance Agreement." This agreement was signed by all the stockholders except one who was over an insurable age, and another who was *240 at that time in the military service. Under the terms of this insurance agreement, G. C. Ealy, Gustav H. Nieman, and Oney S. Riggs (president, vice president and secretary-treasurer, respectively), were designated as trustees for the purpose of taking out insurance policies on the lives of the key officers and employees of the company, all of whom were stockholders. The purchase of policies was authorized and specified in the following amounts: G. C. Ealy
$50,000
Gustav H. Nieman
35,000
O. S. Riggs
10,000
J. W. Macdonald
10,000
Thomas F. Doran
10,000
G. B. Halverson
10,000
The insurance agreement provided, among other things, that any successor in corporate office to the named trustees should succeed to his duties as trustee; that Inland Motor Freight should pay the premiums on the policies specified; and that the proceeds of any policy upon the death of the insured should go to the trustees who should distribute them to the "then stockholders" as provided in the agreement. It was further provided that each shareholder should participate in the proceeds in proportion to his or her stock holdings, and that "said proceeds when distributed may be used by *241 the then stockholders to purchase the common stock in the company held by the one so deceased at the time of his death." It was also agreed that upon the death of an insured stockholder his stock would be offered for sale to the remaining stockholders for a period of ninety days at its "fair value." "Fair value" was defined as "book value, less any consideration for goodwill, certificates and permits from all regulatory bodies." Under the terms of the agreement and the policies of insurance issued pursuant thereto, the named trustees, as trustees, held all powers provided with respect to control and ownership of the policies thereof. Pursuant to the insurance agreement, application was then made by the three trustees named in the agreement for insurance upon the lives of the decedent and the other stockholders of the corporation listed above. The policy of insurance on the life of the decedent, G. C. Ealy, in the amount of $50,000, was issued by the Sun Life Assurance Company of Canada, on November 17, 1943. The premiums due on the policy of life insurance covering the life of G. C. Ealy, were paid by the corporation but were not charged in any way to the decedent on the corporation's *242 books. After the decedent's death, the proceeds, in the amount of $50,785 from the insurance policy referred to above on the life of the decedent, were paid to the trustees of the insurance trust by check dated April 24, 1947, by the Sun Life Assurance Company of Canada. His then executor entered into a contract with the surviving stockholders for the sale to the latter of the 1,598 shares of stock hold by the decedent at his death. The aggregate consideration of $143,820, recited in this stock sale contract (1,598 shares at $90 per share), represents approximately the book value of the stock as of December 31, 1946, exclusive of any value for good will or operating certificates or permits appearing on the corporate records. The buyers of the decedent's shares in the corporation were the surviving stockholders who were also the recipients of the proceeds of the insurance policy on the decedent's life, referred to above. The proceeds of the insurance policy were allocated among the surviving stockholders and applied as a down-payment, under the terms of the stock sale agreement, for the purchase by them of the decedent's shares. The respondent, in his notice of deficiency, included *243 in the decedent's gross estate the proceeds of the insurance policy, referred to above, in the amount of $50,785. Opinion VAN FOSSAN, Judge: The pertinent facts may be summarized briefly as follows: The stockholders of a closely held corporation agreed to appoint trustees to purchase insurance on the lives of certain officers and employees of the corporation. Such insurance was purchased and paid for by the corporation. Decedent was one of the largest stockholders and one of those whose life was insured. The agreement of the stockholders provided that on the death of one of the persons whose life was thus insured the proceeds of the insurance would be apportioned among the surviving [1] stockholders so as to provide them with funds to purchase the deceased stockholder's shares. On the decedent's death the proceeds from the insurance policy on his life were distributed among the surviving stockholders. In accordance with the agreement, decedent's shares (which were included in his gross estate and tax paid thereon) were purchased at book value by the surviving stockholders who used the insurance proceeds as down-payment. *244 The question is whether, under the circumstances here present, an amount equivalent to the proceeds of the insurance policy should be included in the decedent's gross estate. The respondent, on brief, frankly and commendably concedes that he is unable to distinguish the instant case on principle from the decisions of this Court in , and , in which cases we held against respondent on the identical question here presented. Respondent states further that, unless we are of the opinion that the instant case is distinguishable, the above cited cases may be taken as conclusive of the issue here. We see no distinction, and accordingly hold that the question should be resolved in favor of the petitioner. The respondent erred by including the insurance proceeds in the decedent's gross estate. Decision will be entered under Rule 50. Footnotes
1. The agreement provides that apportionment will be among the "then stockholders" but the sense of the entire agreement is that it is intended to mean surviving stockholders. Otherwise the executor of the deceased stockholder would be a "then stockholder" and entitled to share in the insurance proceeds. That this is not intended is shown by the distribution made to the surviving stockholders.↩